UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARED ANDREW MARTIN,<br><br>    Plaintiff,<br><br>v.<br><br>OFFICER NORTHCUTT, et al.,<br><br>    Defendants. | Case No. 1:22-cv-00748-ADA-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S EIGHTH AMENDMENT EXCESSIVE FORCE CLAIM AGAINST DEFENDANT NORTHCUTT, HIS EIGHTH AMENDMENT FAILURE TO PROTECT CLAIM AGAINST DEFENDANT WILLIAMS, AND HIS FIRST AMENDMENT RETALIATION CLAIM AGAINST DEFENDANT WILLIAMS, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED<br><br>(ECF No. 1)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

Jared Martin ("Plaintiff") is a prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on June 21, 2022. (ECF No. 1). Plaintiff alleges that on March 9, 2021, he was assaulted by defendant Northcutt. Defendant Williams failed to protect Plaintiff from the assault and denied Plaintiff medical care for his injuries. Additionally, Plaintiff's property was

1

taken and he was subjected to retaliation.

The Court reviewed the complaint and found that the following claims should proceed past screening: Plaintiff's Eighth Amendment excessive force claim against defendant Northcutt, Plaintiff's Eighth Amendment failure to protect claim against defendant Williams, and Plaintiff's First Amendment retaliation claim against defendant Williams. (ECF No. 10). The Court also found that no other claims should proceed past screening. (Id.).

The Court gave Plaintiff thirty days to either: "a. File a First Amended Complaint; b. Notify the Court in writing that he does not want to file an amended complaint and instead wants to proceed only on his Eighth Amendment excessive force claim against defendant Northcutt, his Eighth Amendment failure to protect claim against defendant Williams, and his First Amendment retaliation claim against defendant Williams; or c. Notify the Court in writing that he wants to stand on his complaint." (Id. at 15). On September 12, 2022, Plaintiff filed his response to the Court's screening order, stating that he wants to stand on his complaint. (ECF No. 11).[1]

Accordingly, the Court issues these findings and recommendations to the district judge consistent with the screening order. Plaintiff has fourteen days from the date of service of these findings and recommendations to file his objections.

**I.  SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C.

---

[1] In Plaintiff's response, Plaintiff refers to facts not alleged in the complaint, including that "Warden Christian Pfeiffer, Secretary Kathleen Allison were told by Jared Martin through letters, through complaints, through the Ombudsman, through 602 grievances that he was being tortured by CDCR employees." (ECF No. 11, p. 1). Plaintiff also alleges at least some of his active cases are federal habeas cases, that they are not frivolous, and that they "are still in court now." (Id. at 2). However, as Plaintiff chose to stand on his complaint instead of filing an amended complaint, the Court will not address any factual allegations that are included in Plaintiff's response but not in his complaint.

1  § 1915A(b)(1), (2).  As Plaintiff is proceeding *in forma pauperis* (ECF No. 8), the Court may
2  also screen the complaint under 28 U.S.C. § 1915.  "Notwithstanding any filing fee, or any
3  portion thereof, that may have been paid, the court shall dismiss the case at any time if the court
4  determines that the action or appeal fails to state a claim upon which relief may be granted."
5  28 U.S.C. § 1915(e)(2)(B)(ii).

6      A complaint is required to contain "a short and plain statement of the claim showing
7  that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are
8  not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere
9  conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell
10 Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  A plaintiff must set forth "sufficient
11 factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id.
12 (quoting Twombly, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting
13 this plausibility standard.  Id. at 679.  While a plaintiff's allegations are taken as true, courts
14 "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d
15 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted).  Additionally, a
16 plaintiff's legal conclusions are not accepted as true.  Iqbal, 556 U.S. at 678.

17     Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal
18 pleadings drafted by lawyers."  Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that
19 *pro se* complaints should continue to be liberally construed after Iqbal).

20     **II.**    **SUMMARY OF PLAINTIFF'S COMPLAINT**

21     At times, Plaintiff's complaint is difficult to understand.  What follows is the Court's
22 best understanding of Plaintiff's factual allegations:

23     The incidents occurred while Plaintiff was incarcerated at Kern Valley State Prison.
24     On March 9, 2021, defendant Northcutt, a correctional officer, hit Plaintiff in the head
25 several times.  He also grabbed Plaintiff's arm, pulled it through the bars, and slammed
26 Plaintiff's arm on the bars multiple times.  He then dragged Plaintiff's arm downward in a
27 pulling motion, scrapping it on the bars.  He did this while Plaintiff was behind prison bars.
28 Plaintiff was not being unruly, and he was alone in the cell.  Plaintiff was no threat to anyone.

Then, defendant Northcutt unlocked the cell, pulled Plaintiff out, and twisted Plaintiff's arm up in what is called a "chicken wing" motion. Defendant Northcutt took Plaintiff and threw him in another cell, then began taunting Plaintiff. Defendant Northcutt threatened to kill Plaintiff, saying, "you[']re going to be the next George Floyd."

Plaintiff was beaten for no reason. Plaintiff had black and blue marks on his arm, he had pain for several days, and he still suffers mental trauma.

Defendant Williams, a correctional sergeant, did not try to stop defendant Northcutt from beating Plaintiff. He also denied Plaintiff medical treatment for his injuries. He also tried to cover-up what happened by hiding Plaintiff in what is called "Ad Seg Overflow." He refused to report the attack. He also told Plaintiff to keep quiet about what happened or there would be more violence against Plaintiff. Defendant Williams threatened Plaintiff on at least three other occasions because Plaintiff continued to put in 602 staff complaints about him and defendant Northcutt. Plaintiff was assaulted, and his life was threatened. They purposely took and hid Plaintiff's legal papers and property. Defendant Williams continues to lie about the incident and claim he was not there when it happened. Defendant Williams was there and covered it up. Since March 9, 2021, defendant Northcutt has attacked Plaintiff again and both he and defendant Williams have threatened to hurt Plaintiff.

Defendants Williams and Northcutt took Plaintiff's legal documents, court papers, and property. They intended to prevent Plaintiff from getting his belongings and "getting into the courts." These defendants and others[2] who were present knew Plaintiff had active cases because Plaintiff told them. They intended to make Plaintiff and his property disappear.

Plaintiff contacted defendant Pfeiffer, the Warden of Kern Valley State Prison, and defendant Allison, the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"). Both of these defendants know Plaintiff was beaten. They were aware that defendant Northcutt and defendant Williams continued to harass and attack and threaten Plaintiff. However, neither lifted a finger to stop the misconduct.

---

[2] The Court notes that Plaintiff does not bring any claims against the "others."

**III.     ANALYSIS OF PLAINTIFF'S COMPLAINT**

    A.   Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

    To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. County of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

B. Excessive Force

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not … use excessive physical force against prisoners." Farmer v. Brennan, 511 U.S. 825, 832 (1994). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry

is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

When determining whether the force was excessive, the Court looks to the "extent of injury suffered by an inmate…, the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7 (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)). While *de minimis* uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9.

Plaintiff alleges that on March 9, 2021, defendant Northcutt hit Plaintiff in the head several times. He also grabbed Plaintiff's arm, pulled it through the bars, and slammed Plaintiff's arm on the bars multiple times. He then dragged Plaintiff's arm downward in a pulling motion, scrapping it on the bars. He did this while Plaintiff was behind prison bars. Plaintiff was not being unruly and he was alone in the cell. Plaintiff was no threat to anyone. Then, defendant Northcutt unlocked the cell, pulled Plaintiff out, and twisted Plaintiff's arm up in what is called a "chicken wing" motion.

Liberally construing the allegations in Plaintiff's complaint, the Court finds that Plaintiff's Eighth Amendment excessive force claim against defendant Northcutt should proceed past screening.

The Court also finds that Plaintiff fails to state an excessive force claim against any other defendant based on this incident. Plaintiff alleges that defendant Pfeiffer, the Warden, and defendant Allison, the Secretary of the CDCR, both knew Plaintiff was beaten because Plaintiff contacted them. However, Plaintiff's allegations are conclusory. There are no allegations suggesting that these defendants were in any way involved or responsible for the March 9, 2021 incident. There are also no allegations suggesting that they acquiesced in the alleged constitutional deprivation. And, as discussed above, supervisory personnel are not

liable under section 1983 for the actions of their employees under a theory of *respondeat superior*.

Finally, the Court notes that Plaintiff alleges that defendant Northcutt and defendant Williams assaulted Plaintiff after the March 9, 2021 incident. However, Plaintiff provides no allegations regarding any other assaults. Accordingly, Plaintiff fails to state a claim for excessive force against any defendants based upon any other assaults.

### C. Failure to Protect

To establish a failure to protect claim, a prisoner must establish that prison officials were deliberately indifferent to a sufficiently serious threat to the prisoner's safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994). "'Deliberate indifference' has both subjective and objective components." Labatad v. Corr. Corp. of Am., 714 F.3d 1155, 1160 (9th Cir. 2013). A prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837. "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" Labatad, 714 F.3d at 1160 (quoting Farmer, 511 U.S. at 847).

Plaintiff alleges that defendant Williams was present during the March 9, 2021 incident, but did not try to stop defendant Northcutt from assaulting Plaintiff.

Liberally construing the allegations in Plaintiff's complaint, the Court finds that Plaintiff's Eighth Amendment failure to protect claim against defendant Williams should proceed past screening.

Plaintiff does not appear to bring a failure to protect claim against any other defendant based on the March 9, 2021 incident. However, Plaintiff does allege that he told defendants Pfeiffer and Allison that he was beaten, and that they were aware that defendant Northcutt and defendant Williams continued to harass, attack, and threaten Plaintiff. The Court finds that Plaintiff fails to state a failure to protect claim based on these allegations because they are conclusory. Plaintiff fails to sufficiently allege that either defendant Pfeiffer or defendant

Allison knew that there was a substantial risk of serious harm to Plaintiff, yet disregarded that risk. Plaintiff does not state how he contacted these defendants, when he contacted these defendants, or what he told these defendants. Moreover, as discussed above, Plaintiff provides no allegations regarding any assaults except the March 9, 2021 assault.

### D. Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a

9

physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff alleges that defendant Williams denied Plaintiff medical treatment for his injuries.

The Court finds that Plaintiff fails to state a claim for deliberate indifference to his serious medical needs because Plaintiff fails to sufficiently allege that defendant Williams knew Plaintiff had a serious medical need yet disregarded that need or any facts that would support this claim.

### E.  Verbal Harassment

Under the Eighth Amendment, allegations of name-calling, verbal abuse, or threats generally fail to state a constitutional claim. See Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) ("[V]erbal harassment generally does not violate the Eighth Amendment."), opinion amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998); see also Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (holding that a prisoner's allegations of threats allegedly made by guards failed to state a cause of action). However, verbal harassment may violate the constitution when it is "'unusually gross even for a prison setting and [is] calculated to and [does] cause [plaintiff] psychological damage.'" Cox v. Kernan, 2019 WL 6840136, at *5 (E.D. Cal. Dec. 16, 2019) (alterations in original) (quoting Keenan, 83 F.3d 1083 at 1092).

Plaintiff alleges that he was harassed and threatened. However, there are no allegations suggesting that the harassment or threats were unusually gross even for a prison setting, that they were calculated to cause psychological damage to Plaintiff, or that they did cause psychological damage to Plaintiff. Accordingly, Plaintiff fails to state an Eighth Amendment verbal harassment claim against any defendant.

\\\

F.  Retaliation in Violation of the First Amendment

There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

"'[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm,' Brodheim, 584 F.3d at 1269, that is 'more than minimal,' Robinson, 408 F.3d at 568 n.11.  That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage.  Id. at 569." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (alteration in original).

While prisoners have no freestanding right to a prison grievance process, see Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995), overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n.2 (2001).  Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities.  Rhodes, 408 F.3d at 567.

Plaintiff alleges that defendant Williams told Plaintiff to keep quiet about what happened on March 9, 2021, or there would be more violence against Plaintiff.  Defendant Williams threatened Plaintiff on at least three other occasions because Plaintiff continued to put in 602 staff complaints about him and defendant Northcutt.

Liberally construing the allegations in Plaintiff's complaint, the Court finds that Plaintiff's First Amendment retaliation claim against defendant Williams should proceed past screening.

G.  Access to Courts

Under the First and Fourteenth Amendments to the Constitution, state inmates have a "'fundamental constitutional right of access to the courts.'" Lewis v. Casey, 518 U.S. 343, 346

(1996) (quoting Bounds v. Smith, 430 U.S. 817 (1977)); Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007), overruled on other grounds by Hust v. Phillips, 555 U.S. 1150 (2009).

To have standing to bring this claim, Plaintiff must demonstrate that he suffered an actual injury. Lewis, 518 U.S. at 351-52 (1996); Vandelft v. Moses, 31 F.3d 794, 798 (9th Cir. 1994). This means Plaintiff must allege that he was prejudiced with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a nonfrivolous claim. Lewis, 518 U.S. at 348-49. To succeed, Plaintiff must have been denied the necessary tools to litigate a nonfrivolous criminal appeal, habeas petition, or civil rights action. Lewis, 518 U.S. at 353-55 & n.3; Christopher v. Harbury, 536 U.S. 403, 415 (2002).

Plaintiff need not show that he would have been successful on the merits of his claims, but only that they were not frivolous. Allen v. Sakai, 48 F.3d 1082, 1085 & n.12 (9th Cir. 1994). A claim "is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). The Ninth Circuit has emphasized that "[a] prisoner need not show, ex post, that he would have been successful on the merits had his claim been considered. To hold otherwise would permit prison officials to substitute their judgment for the courts' and to interfere with a prisoner's right to court access on the chance that the prisoner's claim would eventually be deemed frivolous." Allen, 48 F.3d at 1091 (footnote omitted).

Plaintiff alleges that defendants Williams and Northcutt took Plaintiff's legal documents and court papers to prevent Plaintiff from "getting into the courts." These defendants knew Plaintiff had active cases because Plaintiff told them.

The Court finds that Plaintiff fails to state an access to courts claim. While Plaintiff alleges that his legal documents and papers were taken, there are no allegations suggesting that Plaintiff was prejudiced with respect to contemplated or existing litigation. There are also no allegations regarding his cases, such as the type of each case and the subject of each case, to establish that Plaintiff had a nonfrivolous claim.

### H. Cover-Up

Plaintiff alleges that at least one defendant attempted to cover-up the excessive force incident that occurred on March 9, 2021. "To the extent that Plaintiff attempts to raise a cover-

up claim, it is premature. Allegations that officials engaged in a cover-up state a constitutional claim only if the cover-up deprived a plaintiff of his right of access to courts by causing him to fail to obtain redress for the constitutional violation that was the subject of the cover-up…. A cover-up claim is premature when, as here, Plaintiff's action seeking redress for the underlying constitutional violations remains pending." Dell v. Espinoza, 2017 WL 531893, at *7 (E.D. Cal. Feb. 7, 2017).

## I. Deprivation of Property in Violation of the Fourteenth Amendment

The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and prisoners have a protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). Authorized intentional deprivation of property pursuant to an established state procedure is actionable under the Due Process Clause. Hudson v. Palmer, 468 U.S. 517, 532 & n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985). On the other hand, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson, 468 U.S. at 533. And, "California law provides an adequate post-deprivation remedy for any property deprivations." Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-95). Additionally, "the Due Process Clause is [] not implicated by a *negligent* act of an official causing unintended loss of or injury to … property." Daniels v. Williams, 474 U.S. 327, 328 (1986).

Plaintiff alleges that defendants Williams and Northcutt took Plaintiff's legal documents, court papers, and property. However, there are no allegations suggesting that any defendant took Plaintiff's property pursuant to an established state procedure. Instead, Plaintiff appears to be alleging an unauthorized intentional deprivation of his property. As California law provides an adequate post-deprivation remedy, the Court finds that Plaintiff fails to state a claim against any defendant for depriving him of his property in violation of his Fourteenth Amendment due process rights.

## IV. CONCLUSION AND RECOMMENDATIONS

The Court has screened the complaint and finds that Plaintiff's Eighth Amendment excessive force claim against defendant Northcutt, Plaintiff's Eighth Amendment failure to protect claim against defendant Williams, and Plaintiff's First Amendment retaliation claim against defendant Williams should proceed past the screening stage. The Court also finds that all other claims should be dismissed.

As Plaintiff was given leave to amend but chose to stand on his complaint, the Court does not recommend granting further leave to amend.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This case proceed on Plaintiff's Eighth Amendment excessive force claim against defendant Northcutt, Plaintiff's Eighth Amendment failure to protect claim against defendant Williams, and Plaintiff's First Amendment retaliation claim against defendant Williams; and

2. All other claims and defendants be dismissed.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 13, 2022**            /s/ Erica P. Grosjean
                                         UNITED STATES MAGISTRATE JUDGE